[No. G011260. Fourth Dist., Div. Three. May 8, 1992.]

CALIFORNIA NOVELTIES, INC., et al., Plaintiffs and Respondents, v. PAUL SOKOLOFF, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976(b) parts II and IV of the opinion are not published as they do not meet the standards for publication.

COUNSEL

Chase, Rotchford, Drukker & Bogust and Peter J. Searle for Defendant and Appellant.

Mary Gregory Biggs for Plaintiffs and Respondents.

OPINION

**SONENSHINE, J.**—Paul Sokoloff appeals from entry of default and default judgment in favor of California Novelties, Inc. (California Novelties) and Cindy Madsen Gray. He further appeals from the trial court's order denying his motion to set aside the default and default judgment as void by virtue of an award of damages of which he was not provided adequate notice.

I

On October 29, 1982, California Novelties and two of its officers and directors, Cindy and William Gray, filed a complaint alleging Sokoloff, a former vice-president, director and major shareholder of California Novelties, had engaged in wrongful conduct causing detriment to the best interests of the corporation and personal injury to the individuals. California Novelties sought recovery on causes of action for breach of fiduciary duty,

conversion, accounting, constructive trust and slander.[1] Cindy alleged intentional and negligent infliction of emotional distress.

On October 30, Sokoloff was personally served with the summons, complaint and an order to show cause regarding issuance of a temporary restraining order and injunction to prohibit him from harassing plaintiffs. On November 18, Sokoloff's attorney, Mark Wright, making a special appearance, requested and was granted a two-month continuance of the hearing to January 17, 1983, and an extension of time to that date to answer the complaint. The parties stipulated to a meeting to review the corporation's books and records, and the court issued a temporary restraining order.

Sokoloff did not appear at the continued hearing, nor did he answer or otherwise respond to the complaint. The restraining order against Sokoloff was continued effective for an additional year. By order filed February 8, the court issued an injunction, prohibiting Sokoloff from contacting William and Cindy and from coming within 50 yards of them or the California Novelties facility.

Plaintiffs served Sokoloff by mail with a statement of damages pursuant to Code of Civil Procedure section 425.11 on January 24, and on February 8, they served their request to enter default asking for damages "according to proof." The request was filed on February 10. Plaintiffs' attorney took the originally scheduled default hearing off calendar after she received a request from Sokoloff's second counsel, Michael Schuur, for additional time to respond to the complaint.

When no responsive pleading had been filed by April 20, plaintiffs moved to return the default hearing to the calendar. A four-day hearing took place in May and June, and the default judgment was filed on June 28. The court found Sokoloff had been regularly served with process and had done the alleged acts willfully and maliciously. It awarded California Novelties: $12,725 as compensatory damages for corporate assets converted, with interest at 10 percent per annum to the date of judgment; $36,108.60 as "additional compensatory damages": and $150,000 in punitive damages. Cindy was awarded $15,000 in general damages and $25,000 in punitive damages. The court allowed costs in the amount of $259.40.

Sokoloff was incarcerated on an unrelated conviction from May 1984 to June 1987; his supervised parole continued until January 1989. On February 23, 1989, after Sokoloff was served with an order for appearance at a judgment debtor's examination, his present counsel, Peter Searle, appeared

---

[1]William and Cindy also asserted the slander cause of action. In addition, William sought recovery for intentional and negligent infliction of emotional distress. No default judgment was entered in his favor, thus his claims are irrelevant here.

in court to request a continuance of the matter. The stated reason was that he intended to file a motion to vacate the default judgment on the ground Sokoloff had never been served with the summons and complaint. The court denied the motion.

Twenty-six months passed. Finally, on April 3, 1991, Sokoloff brought a motion to set aside the 1983 default and default judgment. He contended the judgment was void because it exceeded the amount demanded in the complaint and he had not been personally served with a statement of damages. By minute order of May 7, 1991, the court denied Sokoloff's motion. No notice of the order was mailed by the court's clerk or served by any party.  ■■ ■■ ▬▬ ■  Sokoloff's notice of appeal from the default judgment and the denial of his motion to set aside the judgment was filed on July 9, 1991.[2]

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### CINDY'S DEFAULT JUDGMENT

Cindy sought recovery based on Sokoloff's intentional and negligent infliction of emotional distress.[5] She alleged specific instances in which

---

[2]Plaintiff sought dismissal of the appeal on grounds of untimeliness, and we advised the parties we would decide the issue in conjunction with the substantive issues. California Rules of Court, rule 2(a), provides that where neither the clerk nor any party has given notice of entry of a judgment or appealable order, the notice of appeal must be filed within 180 days after entry of the judgment or order. Because no one gave Sokoloff notice of entry of the order here, the 180-day provision is clearly applicable. For some unexplained reason, neither party even mentioned it.

Timeliness of an appeal from an order denying a motion to vacate a default judgment under Code of Civil Procedure section 473 is calculated from the date the order is entered unless the court expressly directs preparation, signing and filing of a written order. (*Jade K.* v. *Viguri* (1989) 210 Cal. App.3d 1459, 1469 [258 Cal.Rptr. 907]; Cal. Rules of Court, rule 2(b)(2).) Here, the court did not direct preparation of a written order. Thus Sokoloff's time to appeal from the order began to run on May 7, 1991, when the order was entered in the permanent minutes. He had 180 days within which to file his notice of appeal. His July 9 notice of appeal from the court's order denying the motion to vacate was obviously timely.

As for the default judgment, Sokoloff's appeal, brought more than eight years after entry, is untimely unless the judgment is void on its face, in which case it can be appealed at any time. (*Twine* v. *Compton Supermarket* (1986) 179 Cal.App.3d 514, 517-518 [224 Cal.Rptr. 562].)

*See footnote, *ante*, page 936.

[5]As noted, all plaintiffs alleged slander and sought $1 million in compensation for damage to their "collective reputation." However, neither on the Code of Civil Procedure section 425.11 statement of damages nor on any documents filed at the prove-up hearing did Cindy

Sokoloff had harassed her and threatened to destroy California Novelties— her sole source of income. On one occasion during Cindy's pregnancy, Sokoloff entered her office and began screaming accusations at her, violently gesticulating, throwing objects, banging his fists and intentionally intimidating Cindy. According to the complaint, the incident so traumatized her that she miscarried. Cindy prayed for general and special damages according to proof and $1 million in punitive damages based on allegations that Sokoloff's acts had been "intentionally and maliciously done for the purpose of causing plaintiffs to suffer humiliation, mental anguish, and emotional and physical distress."

Under Code of Civil Procedure section 425.10, which applies to Cindy's claims, the amount of actual or punitive damages for personal injury shall not be stated in the complaint. Rather, the plaintiff must provide the defendant with a statement of damages pursuant to the provisions of Code of Civil Procedure section 425.11, giving notice of the amount of special and general damages sought to be recovered. Such notice must be given to the nonappearing defendant before a default may be taken.

Here, conforming her complaint to the mandate of Code of Civil Procedure section 425.10, Cindy prayed for general and special damages according to proof, rather than stating an amount. On January 24, 1983, she served Sokoloff by mail with a Code of Civil Procedure section 425.11 statement itemizing general damages of $1 million for emotional distress, special damages of $2,500 for medical costs associated with loss of her unborn child, and $1 million punitive damages. As has already been noted, the request to enter default, served on Sokoloff on February 8 and filed on February 10, did not state any amount of damages. The default judgment subsequently entered did not award Cindy any special damages; it granted her $15,000 general damages and $25,000 punitive damages.

■ With regard to general damages, the Supreme Court tells us a prayer for damages "according to proof" does not provide a defendant with adequate notice of the plaintiff's demands. (*Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494 [165 Cal.Rptr. 825, 612 P.2d 915].) The notice requirement "would be undermined if the door were opened to speculation, no matter how reasonable it might appear in a particular case, that a prayer for damages according to proof provided adequate notice of a defaulting defendant's potential liability. . . . Consequently, a prayer for damages according to proof passes muster under [Code of Civil Procedure] section 580 only if a specific amount of damages is alleged in the body of the complaint. [Citation.]" (*Ibid.*)

seek damages for slander. In light of a record that is silent as to slander damages, we will presume her award was based entirely on her emotional distress claims.

■ No amount having been alleged here, the award of compensatory damages clearly exceeded the demand. We must therefore determine whether the Code of Civil Procedure section 425.11 statement of damages gave Sokoloff the requisite notice of the amount of damages for which he could be held liable to Cindy in the event he chose not to respond to her complaint.

Sokoloff contends Cindy had an absolute duty to effect *personal service* of the statement of damages *30 days* prior to obtaining entry of default.[6] He cites us to a line of authority beginning with *Plotitsa* v. *Superior Court* (1983) 140 Cal.App.3d 755 [189 Cal.Rptr. 769]. In *Plotitsa*, defendants had been validly served with a personal injury complaint which, in accordance with Code of Civil Procedure section 425.10, did not state the amount of damages sought. On June 1, plaintiff served defendants by mail with a request to enter default stating a single-figure total demand of $25,000; default was entered the following day. The *Plotitsa* court found that where no amount of damages is stated in the complaint, a Code of Civil Procedure section 425.11 statement of damages, as the functional equivalent of an amendment increasing the demand, must be personally served on a nonappearing defendant 30 days before a default may be entered. (*Id.* at pp. 759-761.)

*Jones* v. *Interstate Recovery Service* (1984) 160 Cal.App.3d 925 [206 Cal.Rptr. 924] followed suit and expanded on the theme. The *Jones* complaint prayed for general and punitive damages in specific amounts, but special damages according to proof. The defendant was not personally served with a statement of damages. The trial court awarded a default judgment of general and punitive damages. The appellate court affirmed a subsequent order setting aside the judgment for plaintiff's failure to personally serve the Code of Civil Procedure section 425.11 statement. Deciding the issue of "what constitutes sufficient notice of damages in order to enter a default judgment" (at p. 928), the court noted "[s]ection 425.11 was designed to give a defendant 'one "last clear chance" to respond to the allegations of the complaint and to avoid the precise consequences . . . [of] a judgment for a substantial sum . . . [without] any actual notice of . . . potential liability.' [Citation.] Leaving out a step in the process can hardly be

---

[6]In his moving papers in the trial court, Sokoloff asserted, although not by way of declaration, that he had never been served at all, either personally or by mail, with the statement of damages. Plaintiffs' counsel, after examining the court's records and finding no copy of the statement of damages and proof of service on file, searched her office archives and located copies of the documents. On the basis of counsel's affidavit regarding service on Sokoloff, the court granted plaintiffs leave to file the documents. Thereafter, Sokoloff never again raised the argument that he had not been served with the statement of damages; he simply protested that the *method* of service, by mail, was improper. In light of Sokoloff's abandonment of his claim of *no* service, and his failure to deny his receipt of *actual notice* of the damages claimed, we will proceed with our analysis on the assumption that service by mail was accomplished.

deemed 'one last *clear* chance.' " (*Id.* at pp. 928-929.) It added that "[w]here a default judgment is entered without defendant being informed of the potential special damages, the defendant lacks sufficient knowledge to make the decision of defending against or ignoring plaintiff's claims." (*Id.* at p. 929.)

The *Jones* court reached this conclusion despite the fact that no special damages had been awarded against the defendant. In doing so, it disagreed with *Uva* v. *Evans* (1978) 83 Cal.App.3d 356 [147 Cal.Rptr. 795]. There, the complaint and request for entry of default specified general damages of $30,000. Although no amount was stated for special damages sought, the *Uva* court concluded that Code of Civil Procedure section 425.11 had been satisfied because "the amount of damages sought was contained in every piece of paper which plaintiff served on defendant." (At p. 361.) It further concluded that because only general damages had been awarded, the defendant had not been prejudiced by plaintiff's lack of specification of special damages. (*Ibid.*) Rejecting the *Uva* court's reasoning, the *Jones* court stated, "[T]he amount of general damages is usually based on the amount of specials proved. A defendant may choose not to defend based on the amount of specials alleged. Consequently we need not probe our imagination deeply to discern prejudice to a defendant who was not apprised of the amount of special damages incurred." (*Jones* v. *Interstate Recovery Service, supra,* 160 Cal.App.3d at pp. 929-930.)

In *Twine* v. *Compton Supermarket, supra,* 179 Cal.App.3d 514, the court found a default judgment void as in excess of the court's jurisdiction where the documents of record showed on their face that plaintiffs served the statement of damages by mail and obtained entry of default three days later. (*Id.* at p. 517.) The court stated: "[T]he plaintiff must personally serve a defendant, who has not appeared, with the statement of damages and defer entry of default until 30 days from such service so that defendant can file a responsive pleading." (*Ibid.*) And in *Lopez* v. *Fancelli* (1990) 221 Cal.App.3d 1305 [271 Cal.Rptr. 87], the court found defendant had not received proper notice of the nature and amount of recovery sought, even though plaintiff had sent a demand letter to defendant's insurance carrier, outlining his special and general damages claims. The court assumed the letter "could, under appropriate circumstances, serve as a statement of damages." (*Id.* at p. 1310.) It found, however, "the lack of personal service on defendants . . . [rendered] the letter inoperative as a notice of claimed damages." (*Ibid.*)

The Supreme Court turned its attention to the issue in *Schwab* v. *Rondel Homes, Inc.* (1991) 53 Cal.3d 428 [280 Cal.Rptr. 83, 808 P.2d 226], where it was required to decide "whether a plaintiff's failure to serve notice of

damages upon a defendant pursuant to Code of Civil Procedure sections 425.10 and 425.11 precludes the plaintiff from taking a default against the defendant." (*Id.* at p. 430, fn. omitted.) Noting at the outset "that a plaintiff may not take a default against a defendant without giving the defendant actual notice as required by statute," (*ibid.*), the court went on to discuss Plotitsa, its progeny, and a number of other cases dealing with the issue of adequate notice of damages in default situations. It observed that in *Plotitsa*, the court had "vacated a default where notice of damages claimed had been sent only one day before default was entered against the defendant," and that in *Hamm* v. *Elkin* (1987) 196 Cal.App.3d 1343 [242 Cal.Rptr. 545], "the Court of Appeal refused to uphold a default where a statement of damages was not served upon the defendant until after the default was entered." (*Schwab* v. *Rondel Homes, Inc., supra,* 53 Cal.3d at p. 434.)

But it also pointed to *Greenup* v. *Rodman, supra,* 42 Cal.3d 822, where the plaintiff's complaint, stating no dollar amount, claimed general damages " 'in an amount that exceeds the jurisdictional requirements of this court' " and thus gave adequate notice to the defendant that plaintiff was seeking "at least $15,000—the jurisdictional minimum of the court in which she appeared." (*Schwab* v. *Rondel Homes, Inc., supra,* 53 Cal.3d at p. 433.) And *Schwab* approved *Greenup*'s disposition, although it disapproved any broad rule suggesting a default judgment would be authorized "in the absence of notice in the complaint or a 'statement of damages' of the special and general damages sought." (*Id.* at p. 434.)

The *Schwab* court also referred to *Uva* v. *Evans, supra,* 83 Cal.App.3d 356, stating: "Where the defendant has been given *actual* notice, though no document entitled 'statement of damages' has been served upon the defendant, the Courts of Appeal have sometimes sustained an entry of default." (*Schwab* v. *Rondel Homes, Inc., supra,* 53 Cal.3d at p. 434, fn 7.) Referring to all of these cases, and others not discussed here, the *Schwab* court said: "We agree with these decisions' interpretation of [Code of Civil Procedure section 425.11.]" (*Id.* at p. 435.) It concluded: "A defendant is entitled to *actual* notice of the liability to which he or she may be subjected, a *reasonable period of time* before default may be entered." (*Ibid.*, italics added.)

Neither expressly nor by implication does *Schwab* equate actual notice with personal service of a statement of damages under Code of Civil Procedure section 425.11 statement. Nor does it equate a *reasonable* period of time with *30 days' notice* prior to entry of default. Rather, *Schwab* sets forth a standard sufficiently flexible to validate the notice of potential liability provided to Sokoloff by Cindy in this case.

Cindy's Code of Civil Procedure section 425.11 statement of damages specified special damages of $2,500, general damages of $1 million and punitive damages of $1 million. The statement was served on Sokoloff by mail on January 24, 1983. Sokoloff contends he was not *personally* served, but he does not deny he had *actual notice* of Cindy's demand for damages. The request to enter default was not filed until 17 days after the statement of damages was served. We conclude from the broad language utilized by the *Schwab* court that there is no hard and fast rule regarding the precise method or timing of service of the section 425.11 statement of damages. Rather, we are to determine in each case whether minimum standards of due process have been met. Here, we have no difficulty finding that by mailing service 17 days prior to entry of default, Cindy gave Sokoloff the requisite actual notice of his maximum potential liability for general and special damages and provided him a reasonable period of time within which to respond.

We reach the same conclusion with regard to the $25,000 punitive damages award. It obviously did not exceed the demand for $1 million. Nonetheless, Sokoloff contends it cannot stand because it is unsupported by sufficient evidence, unrelated to any actual damages properly pleaded or awarded and excessive as a matter of law. Apart from the problem of untimeliness of those aspects of the argument having nothing to do with jurisdiction, we observe that Sokoloff has provided us with no record of the testimony presented by plaintiffs at the four-day hearing on damages, thus he is in a poor position to urge insufficiency of the evidence. "The appellant must affirmatively show error by an adequate record. [Citations.]" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 418, pp. 415-416.) Moreover, we certainly cannot say the award of punitive damages, here equal to less than twice the amount of compensatory damages which we have already determined proper, is excessive as a matter of law. (See *Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 390 [202 Cal.Rptr. 204].)

We conclude the default judgment in favor of Cindy did not exceed the demand; thus, the judgment was not void on its face. Sokoloff's untimely appeal from the default and default judgment is dismissed. The trial court's order denying Sokoloff's motion to set aside the judgment is affirmed.

### IV

### CALIFORNIA NOVELTIES' DEFAULT JUDGMENT*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

We affirm the order denying Sokoloff's motion to set aside the default and default judgment. Respondents shall recover their costs on appeal.

Moore, J., concurred.

*See footnote, *ante*, page 936.

**CROSBY, Acting P. J.,** Concurring.—I would affirm the order simply on the basis that Sokoloff did not seek to set aside the default judgment within a reasonable time, not to exceed two years, after entry of the default judgment. (Code Civ. Proc., § 473.5; *Rogers* v. *Silverman* (1989) 216 Cal.App.3d 1114, 1124 [265 Cal.Rptr. 286]; see also 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, §§ 185-187, p. 814 et seq.) Also, laches would prevent equitable relief in any event.

I also disagree with my colleagues' decision to partially publish this opinion. It will tend to encourage sloppy practices.

A petition for a rehearing was denied May 28, 1992.